IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

| | |
|---|---|
| CURT SIMPSON, | |
| Plaintiff, | CV 19-197-M-DLC-KLD |
| vs. | |
| CHS, INC., d/b/a CENEX ZIP TRIP, | FINDINGS & RECOMMENDATION |
| Defendant. | |

This matter comes before the Court on Defendant CHS, Inc's motion to strike Plaintiff Curt Simpson's expert report (Doc. 69), and the parties' cross-motions for summary judgment. (Docs. 57 and 71). For the reasons outlined below, Simpson's motion for summary judgment (Doc. 57) should be denied and CHS's cross-motion for summary judgment (Doc. 71) should be granted, and CHS's motion to strike Simpson's expert report (Doc. 69) should be denied as moot.

I.     **Background**

In December 2019, Simpson filed this action against CHS alleging that its Cenex Zip Trip convenience store located on Toole Avenue in Missoula, Montana ("the Premises") was in violation of the Americans with Disabilities Act, 42 U.S.C. § 12181 ("ADA"). (Doc. 1). Simpson is disabled and uses a wheelchair for mobility. (Doc. 66, at 2 ¶ 1). On November 7, 2019, Simpson visited the Premises

and claims he was denied full and equal enjoyment of the services, goods, privileges, and accommodations offered at the facility. (Doc. 1, ¶ 4). Specifically, Simpson alleges the Premises contained ("inter alia") 19 barriers that violated the ADA's requirements for places of public accommodation. (Doc. 1, ¶ 18). Simpson seeks injunctive relief to remedy the alleged ADA violations at the Premises, and requests an award of attorney fees and costs. (Doc. 1, at 13-14).

During discovery, Simpson disclosed Maria Garcia as an expert witness regarding ADA compliance. In August 2019, approximately three months before Simpson visited the Premises and six months before he filed this lawsuit, Simpson's attorney hired Garcia to conduct ADA evaluations at the Premises and approximately forty other Missoula facilities. (Doc. 66-1 20:13-23:2; 23:19-25). Garcia recorded her observations of the Premises and, with the assistance of a computer program known as BlueDAG, generated a Prefiling Accessibility Evaluation Report ("First Report"). (Doc. 66-1 at 33:25-34:1-15). The First Report detailed 20 Findings of ADA violations as they existed when Garcia visited the Premises in early August of 2019. (Doc. 66-1).  The 19 ADA violations alleged in Simpson's Complaint track Findings 1-14 and 16-20 in Garcia's First Report. (Docs. 65 at 2; 66, ¶ 20; Doc. 66-1 at 20:1-12; 22:24-23:2; 25:3-10).

In response to Simpson's initial discovery requests, CHS admitted to eight of the 19 violations alleged in the Complaint, four pertaining to the Premises' interior

and four pertaining to the Premises' exterior. (Doc. 26-3 at 3-5). Simpson subsequently filed a motion for summary judgment asserting there were no disputed material facts as to the eight admitted violations. (Docs. 26; 26-1 at 5). Before responding to the merits, CHS filed a motion to defer ruling on Simpson's summary judgment motion to allow more discovery. (Doc. 27). The Court granted CHS's motion (Doc. 36), and CHS later supplemented its discovery responses to deny the eight previously admitted ADA violations because it had undertaken renovations at the Premises and claimed the violations had either been remedied or no longer existed. (Doc. 41 at 2).

In September 2020, CHS responded to Simpson's motion for summary judgment and moved to dismiss the Complaint for lack of subject matter jurisdiction on the ground that Simpson's ADA claims had been rendered moot due to CHS's voluntary remediation efforts. (Docs. 39; 40). CHS provided a supporting affidavit from its general manager, Steve Haase, stating that on "August 7, 2020, CHS closed the Premises to any customers for an extensive remodel and renovation of both the interior and exterior of the Premises." (Doc. 41 at 2). Haase explained that the non-compliant interior barriers no longer existed. (Doc. 41 at 2). Haase further stated the Premises would not reopen until the renovation was complete and the exterior was fully ADA compliant. (Doc. 41 at 3). The Premises reopened in November 2020. (Doc. 66, at 11 ¶ 25).

On February 26, 2021, the Court denied CHS's motion to dismiss on the ground that CHS had not met its burden of demonstrating that Simpson's ADA claims were moot. (Doc. 51). The Court also denied Simpson's motion for summary judgment, reasoning that while the Haase affidavit and related documents were insufficient to establish mootness, they were sufficient to raise a genuine dispute of material fact as to whether the Premises violated the ADA in reference to the eight previously admitted features. (Doc. 51, at 12).

Approximately three months later, on May 14, 2021, Garcia visited the Premises for a second time. (Doc. 66-1, at 6). Garcia conducted an inspection of the remodeled Premises pursuant to Federal Rule of Civil Procedure 34, and documented her findings in an ADA Accessibility Evaluation Report ("Second Report"). (Doc. 58-3). The Second Report contains 120 Findings identifying several alleged ADA violations and several instances of ADA compliance on the remodeled Premises. Many of the ADA violations identified in the Second Report were not alleged in the Complaint. (Doc. 58-3). As with the First Report, Garcia generated her Second Report using the BlueDAG program software. (Doc. 70-1 at 30:2-31:3).

CHS has filed a motion in limine to strike Garcia's Second Report in whole or in part on the ground that her opinions are inadmissible under Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579

(1993). (Doc. 70). CHS argues the Second Report is mostly irrelevant to the ADA claims actually pled in the Complaint, is replete with inadmissible legal conclusions, and is not based on a reliable methodology.

CHS and Simpson have also filed cross-motions for summary judgment. (Docs. 57; 71). CHS moves for summary judgment on the grounds that the ADA claims alleged in the Complaint are moot in light of CHS's remediation efforts, and Simpson lacks standing because he cannot show a likelihood of future injury. Simpson, in turn, argues he is entitled to summary judgment because the undisputed evidence demonstrates that all three elements of his ADA claim are satisfied.

For reasons that will become apparent in the discussion that follows, the Court need only address the parties' cross-motions for summary judgment. The Court considers CHS's argument that certain portions of the Second Report should effectively be stricken as part of the summary judgment analysis.[1]

## II.    Summary Judgment Standard

Under Federal Rules of Civil Procedure 56(a), a party is entitled to summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The party seeking

---

[1] The Court does not address CHS's arguments that Garcia's Second Report was not the product of reliable methodology and contains impermissible legal conclusions.

summary judgment bears the initial burden of informing the court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, which it believes demonstrate the absence of any genuine issue of material fact. *Celotex Corp. v. Cattrett,* 477 U.S. 317, 323 (1986). A movant may satisfy this burden where the documentary evidence permits only one conclusion. *Anderson v. Liberty Lobby Inc.,* 477 U.S. 242, 251 (1986).

Once the moving party has satisfied its initial burden with a properly supported motion, summary judgment is appropriate unless the non-moving party designates by affidavits, depositions, answers to interrogatories or admissions on file "specific facts showing that there is a genuine issue for trial." *Celotex,* 477 U.S. at 324. The non-moving party "may not rest upon the mere allegations or denials" of the pleadings. *Anderson*, 477 U.S. at 248.

In considering a motion for summary judgment, the court "may not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods.,* 530 U.S. 130, 150 (2000); *Anderson*, 477 U.S. at 249-50. The Court must view the evidence in light most favorable to the non-moving party and draw all justifiable inferences in the non-moving party's favor. *Anderson*, 477 U.S. at 255; *Betz v. Trainer Wortham & Co., Inc.,* 504 F.3d 1017, 1020-21 (9th Cir. 2007).

When presented with cross-motions for summary judgment on the same matters, the court must "evaluate each motion separately, giving the non-moving party the benefit of all reasonable inferences." *American Civil Liberties Union of Nevada v. City of Las Vegas,* 333 F. 3d 1092, 1097 (9th Cir. 2003).

## III.   Discussion

Title III of the ADA prohibits discrimination against an individual "on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation." 42 U.S.C. § 12182(a). To prevail on his discrimination claims under Title III of the ADA, Simpson must demonstrate that: (1) he is disabled within the meaning of the ADA; (2) CHS is a private entity that owns, leases, or operates a place of public accommodation; and (3) he was denied public accommodations by CHS because of his disability. *Molski v. M.J. Cable, Inc.*, 48 F.3d 724, 730 (9th Cir. 2007).

The first two elements are not in dispute. Simpson has presented evidence that he uses a wheelchair for mobility, and CHS does not dispute that he is disabled within the meaning of the ADA. (Doc. 66, at 2 ¶ 1). It is further undisputed that CHS owns and operates the Premises, which is a place of public accommodation as defined by the ADA. (Doc. 66, at 2 ¶¶ 3-4).

As to the third element, Simpson argues the undisputed evidence demonstrates that he encountered ADA-noncompliant wheelchair barriers when he visited the Premises in November 2019, which means he has standing to challenge all wheelchair barriers at the Premises including those identified by Garcia when she inspected the Premises in May 2021 and set forth her Second Report. Because the Second Report identifies several non-compliant barriers that allegedly exist at the Premises even after the remodel and CHS has not come forward with any evidence to the contrary, Simpson maintains, the third element of his ADA claim is also satisfied and he is entitled to summary judgment.

CHS counters that under Ninth Circuit caselaw an ADA plaintiff may not obtain injunctive relief for barriers that are not identified in the complaint. Because Simpson's summary judgment motion is based entirely on barriers that were identified for the first time in Garcia's Second Report, CHS argues, he has failed to establish an essential element of his claim, namely, that he was denied public accommodations by CHS because of his disability. CHS cross-moves for summary judgment on the ground that all 19 barriers alleged in the Complaint have been remedied or no longer exist, thus rendering Simpson's ADA claims moot and depriving him of standing.

As these opposing arguments reflect, the parties disagree on the threshold issue of whether Simpson can maintain claims against CHS based on barriers that

were not pled in the Complaint and were identified for the first time in Garcia's Second Report.

### A.    Unpled Barriers

Simpson frames this issue as one relating to standing, and argues that an ADA plaintiff who has encountered at least one barrier that impedes his full and equal enjoyment of a place of public accommodation has standing to challenge all barriers at the facility that are related to the plaintiff's disability.

To establish standing under Article III of the United States Constitution, a plaintiff must "demonstrate that he has suffered an injury-in-fact, that the injury is traceable to the [defendant's] actions, and that the injury can be redressed by a favorable decision." *Chapman v. Pier 1 Imports (U.S.) Inc.*, 631 F.3d 939, 947 (9th Cir. 2011). "Once a disabled individual has encountered or become aware of alleged ADA violations that deter his patronage of or otherwise interfere with his access to a place of public accommodation, he has already suffered an injury in fact traceable to the defendant's conduct and capable of being redressed by the courts, and so he possesses standing under Article III…." *Chapman*, 631 F.3d at 947 (quoting *Doran v. 7-Eleven, Inc.*, 524 F.3d 1034, 1042 n. 5 (9th Cir. 2008)). A barrier "will only amount to such interference if it affects the plaintiff's full and equal enjoyment of the facility on account of his particular disability." *Chapman*, 631 F.3d at 947.

Simpson relies on *Doran,* which held that "[a]n ADA plaintiff who has Article III standing as a result of at least one barrier at a place of public accommodation may, in one suit, permissibly challenge all barriers in that public accommodation that are related to his or her specific disability." *Doran*, 524 F.3d at 1047. In other words, as long as the plaintiff has encountered or has personal knowledge of at least one barrier that interferes with his full and equal enjoyment of the facility, he has standing to challenge all barriers at the facility that relate to his particular disability.

Simpson notes that when CHS responded to his initial discovery requests, it admitted to eight of the 19 ADA violations alleged in the Complaint. (Doc. 26-3, at 3-5). While CHS later supplemented those discovery responses to deny the eight previously admitted violations based on remediation efforts at the Premises, CHS does not dispute that when Simpson filed his Complaint in December 2019 the Premises contained barriers that were not ADA-compliant.  (Doc. 66, at 3 ¶ 7). Simpson argues this undisputed evidence demonstrates that he encountered at least one ADA-noncompliant barrier when he visited the Premises in November 2019, which means he has standing to challenge all wheelchair barriers at the Premises, including those identified by Garcia when she inspected the remodeled Premises in May 2021 and set forth in her Second Report.

While Simpson is correct that he need not have personally encountered every challenged barrier in order to have standing under the ADA, this principle only gets him so far. By focusing on the issue of standing, Simpson overlooks the notice pleading requirements of Federal Rule of Civil Procedure 8. Rule 8 states that a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).  At a minimum, a complaint must allege enough specific facts to provide the defendant with "fair notice" of the particular claim being asserted and "the grounds upon which [the claim] rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

Where, as here, "the claim is one of discrimination under the ADA due to the presence of architectural barriers at a place of public accommodation," the Ninth Circuit has "held that the relevant 'grounds' are the allegedly non-compliant architectural features at the facility." *Oliver v. Ralphs Grocery Co.*, 654 F.3d 903, 908 (9th Cir. 2011) (citing *Pickern v. Pier 1 Imports U.S.), Inc.*, 457 F.3d 963, 968 (9th Cir. 2006)). "Thus, in order for the complaint to provide fair notice to the defendant, each such feature must be alleged in the complaint." *Oliver*, 654 F.3d at 908 (citing *Pickern*, 457 F.3d at 968).

In *Oliver,* the plaintiff filed an ADA complaint alleging that he had visited the defendant's grocery store and encountered several barriers that interfered with his use and enjoyment of the facility. *Oliver*, 654 F.3d at 905. The complaint stated

11

that those barriers "included, but were not limited to" 18 architectural features. *Oliver*, 654 F.3d at 905. Shortly after receiving the plaintiff's complaint, the defendant began renovations at the store and removed several of the barriers identified in the complaint. *Oliver*, 654 F.3d at 906.  After the deadline for  filing amended pleadings had passed, the plaintiff unsuccessfully sought leave to amend the complaint to identify six additional architectural features at the store that allegedly violated the ADA. *Oliver*, 654 F.3d at 906. Approximately four months later, the plaintiff filed an expert report that "provided additional detail concerning some of the barriers already identified in [the] complaint, but also added several additional barriers that had not been listed in the complaint." *Oliver*, 654 F.3d at 906. On summary judgment, the district court refused to consider the barriers identified in the expert report, and then ruled against the plaintiff on all 18 barriers listed in the complaint. *Oliver*, 654 F.3d at 906.

The Ninth Circuit affirmed, concluding the district properly refused to consider the barriers that were identified in the plaintiff's expert report but not alleged in his complaint. *Oliver*, 654 F.3d at 908. The Ninth Circuit found that the plaintiff had not given the defendant "fair notice that the barriers listed for the first time in the expert report were grounds for his claim of discrimination under the ADA," as required by Rule 8. *Oliver*, 654 F.3d at 909. The Ninth Circuit instructed that "[i]n general, only disclosure of barriers in a properly pleaded complaint can

provide such notice; a disclosure made during discovery, including in an expert report, would rarely be an adequate substitute." *Oliver*, 654 F.3d at 909.

Like Simpson, the plaintiff in *Oliver* argued based on *Doran* that "the complaint need not give the defendant notice of every barrier for which the plaintiff seeks relief, because a disabled plaintiff who has encountered at least one barrier at a facility can sue to remove all the barriers at the facility related to his specific facility." *Oliver*, 654 F.3d at 909. The Ninth Circuit rejected this argument, finding *Doran* did not help the plaintiff because it spoke only to constitutional standing and shed "no light on what a plaintiff's complaint must include to comply with the fair notice requirement of Rule 8." *Oliver*, 654 F.3d at 909. On this issue, the Ninth Circuit held that "for purposes of Rule 8, a plaintiff must identify the barriers that constitute the grounds for a claim of discrimination under the ADA in the complaint itself; a defendant is not deemed to have fair notice of barriers identified elsewhere." *Oliver*, 654 F.3d at 909. See also *Pickern*, 457 F.3d at 969 (concluding that the plaintiff's expert report identifying barriers at the defendant's facility was not sufficient to constitute "fair notice" under Rule 8 because it did not specify "what allegations [the plaintiff] was including in the suit" and was "not filed and served until after the discovery deadline.").

Here, as in *Oliver*, Simpson has not given CHS fair notice that the barriers identified for the first time in Garcia's Second Report were grounds for his claims

13

of discrimination under the ADA. Unlike the Second Report, which identifies dozens of allegedly non-compliant barriers, Simpson's Complaint lists 19 barriers at the Premises that he claims violated the ADA's requirements for places of public accommodation. The deadline to amend the pleadings passed in June 2020 – long before Garcia inspected the Premises in May 2021 and compiled her Second Report. (Doc. 25, at 1). Even after that deadline passed, Simpson could have moved for leave to amend his complaint for good cause pursuant to Federal Rule of Civil Procedure 16. However, Simpson never sought or obtained leave to amend his Complaint to allege additional barriers as grounds for his claim of discrimination under the ADA. Thus, the original Complaint filed in December 2019 remains the operative pleading. Because CHS did not have fair notice of any barriers that were identified for the first time in Garcia's Second Report, they are not properly considered on summary judgment.

As CHS reads it, Simpson's summary judgment motion is based entirely on barriers that were identified for the first time in Garcia's Second Report. Assuming, as the Court has decided, that Rule 8 precludes consideration of any barriers not alleged in Complaint, CHS argues Simpson has failed to establish that he was denied public accommodations by CHS because of his disability and his summary judgment should be denied accordingly.

Simpson disagrees with CHS's reading of his summary judgment motion, and takes issue with what he characterizes as an attempt by CHS "to persuade the court that [he] has created all new barrier allegations from the Complaint within the Motion for summary judgment." (Doc. 73, at 5). Citing exclusively to Garcia's Second Report, Simpson moves for summary judgment based on the following alleged barriers: (1) non-compliant parking space and access aisle widths; (2) non-compliant parking space and access aisle cross and running slopes; (3) non-compliant merchandise reach lengths for wheelchair accessibility; (4) non-compliant merchandise reach ranges and lengths for wheelchair accessibility; (5) non-compliant mats for wheelchair access; (6) non-compliant interior signage for wheelchair access; (7) non-compliant emergency exit doorway; (8) non-compliant interior door opening force measurement; and (9) non-compliant toilet. (Doc 58, at 11-17; Doc. 59, at 3-4). Simpson argues the Complaint alleges many of the same barriers that are identified in the Second Report, including specifically: non-compliant parking space width and access aisle; non-compliant floor mats; and non-compliant self-serve and merchandise reach ranges. (Doc. 73, at 6-7).

Contrary to Simpson's argument, the parking space width and access aisle barriers identified in the Second Report (Findings 2-6) were not alleged in Complaint.  When Simpson filed his Complaint in December 2019, the accessible parking space at the Premises was located in front of the store. (Doc. 66, at 18 ¶

15

57).  As part of the remodel, CHF removed the parking stall at the front of the store

and constructed two new accessible parking stalls on the west side of the building.

(Doc. 66, at 18 ¶ 58-59). Because they did not exist at the time, the parking space

width and access aisle barriers identified in Findings 1-6 of the Second Report

were not, and indeed could not have been, specifically identified in the Complaint.

Consequently, CHS did not have fair notice that these alleged barriers were

grounds for Simpson's ADA claims and they are not properly before the Court on

summary judgment.

To the extent the Second Report contains Findings that can arguably be

construed as providing additional detail concerning the floor mat and reach range

barriers alleged in the Complaint, those Findings are discussed below. In all other

respects, however, the Second Report identifies barriers that were not alleged in

the Complaint, including: non-compliant parking space and access aisle cross and

running slopes (Findings 7-12; 17-24); non-compliant paper towel dispenser

controls (Findings 80; 100); non-compliant emergency exit (Findings 86-90); non-

compliant signage on interior doors (Findings 83-85); non-compliant interior door

opening force measurement (Finding 95), and; non-compliant collection container

in the restroom (Findings 119; 120).[2] Because these barriers were identified for the

---

[2] The Second Report also contains many Findings of ADA compliance at the
Premises, including specifically Findings 13-16; 25-33; 59-61; 91-94; 96-99; 101-
103; 106-118).  (Doc. 58-3).

first time in Garcia's Second Report, CHS did not have fair notice that they were grounds for Simpson's ADA claims and they are not properly considered on summary judgment.

For the reasons set forth above, the Court finds that for summary judgment purposes Simpson's ADA claims are limited to the 19 barriers alleged in the Complaint. CHS argues it is entitled to summary judgment because the undisputed evidence demonstrates that those 19 barriers have been remedied or no longer exist, thereby rendering Simpson's claims moot.

## B.    Mootness

The doctrine of mootness "is embedded in Article III's case or controversy requirement," and "requires that an actual, ongoing controversy exist at all stages of the federal court proceedings." *Bayer v. Neiman Marcus Grp., In.,* 861 F.3d 853, 862 (9th Cir. 2017) (quoting *Pitts v. Terrible Herbst, Inc.,* 653 F.3d 1081, 1086 (9th Cir. 2011) (citing *Burke v. Barnes,* 479 U.S. 361, 363, 107 S.Ct. 734 (1987). A case becomes moot "when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91 (2013). See also *Clark v. City of Lakewood*, 259 F.3d 996, 1011 (9th Cir. 2001). The party asserting mootness bears the burden "of establishing that there remains no effective relief a court can provide." *Bayer*, 861 F.3d at 862.

"Because a plaintiff can sue only for injunctive relief (i.e., for removal of the barrier) under the ADA, a defendant's voluntary removal of alleged barriers prior to trial can have the effect of mooting a plaintiff's ADA claims." *Oliver,* 654 F.3d at 905 (citing *Hubbard v. 7-Eleve, Inc.*, 544 F.Supp.2d 1134, 1145 (S.D. Cal. 2006)). See also, *Sanchez v. Yellow Basket Restaurant*, 2019 WL 6605405, at *3-4 (C.D. Cal. Oct. 21, 2019) (findings plaintiff's ADA claim moot because there was no genuine dispute that the alleged accessibility barriers had been fully remediated); *Parr v. L&L Drive-Inn Restaurant*, 96 F.Supp.2d 1065, 1070 (D. Haw. 2000) holding that ADA "[c]laims that have been remediated are no longer in dispute and are therefore moot").

CHS argues that Simpsons claims are moot because Garcia's deposition testimony and other undisputed evidence in the record demonstrate that the 19 barriers alleged in the Complaint either no longer exist or have been remedied. The Court addresses each alleged barrier in the order listed in paragraph 18(a)-(s) of the Complaint.

1.   <u>Number of accessible parking stalls</u>

Paragraph 18(a) of the Complaint alleges CHS failed to provide an ADA compliant number of accessible parking stalls throughout the Premises, in violation of 2010 ADA Standards for Accessible Design ("2010 ADAS") and 2015 Architectural Barriers Act Accessibility Standards ("2015 ABAAS") Section

208.2. (Doc. 1, at p. 7, ¶ 18(a)). Garcia's First Report contained a finding that the Premises was not in compliance with the ADA because it did not have enough accessible parking stalls. (Doc. 66-1, at 18). At her deposition, Garcia testified that when she conducted her Rule 34 inspection in May 2021, the Premises had the correct number of accessible parking stalls as required by the ADA. (Doc. 66-1, at p. 8, 41:1-42:3). Consistent with Garcia's deposition testimony, this barrier is not identified in the Second Report. The undisputed evidence thus demonstrates that this alleged barrier has been remedied.

2.    Parking stall width clearance

Paragraph 18(b) of the Complaint alleges CHS failed to provide ADA compliant stall width clearance in violation of 2010 ADAS and 2015 ABAAS Section 502.2. (Doc. 1, at p. 7, ¶ 18(b)). Garcia's First Report contained a finding that the Premises was not in compliance with the ADA because the one accessible parking stall that existed at the time was not wide enough. (Doc. 66-1, at 19). At her deposition, Garcia testified that when she inspected the remodeled Premises in May 2021, the parking stall that was present when she prepared her First Report in August 2019 no longer existed. (Doc. 66-1, at p. 8, 42:8-18). In August 2019, the accessible parking stall was located in the front of the store. (Doc. 66, at 18 ¶ 57). As part of the remodel, CHS removed the parking stall at the front of the store and constructed two new accessible parking stalls on the west side of the building.

19

(Doc. 66, at 18 ¶¶ 58-59). The undisputed evidence thus demonstrates that the specific parking stall width clearance violation alleged in the Complaint no longer exists. Consistent with the undisputed evidence, and as discussed above, Garcia's Second Report does not identify this specific barrier.

As discussed above, while the Second Report identifies a new barrier relating to the width of the parking space at the new parking lot (Doc. 58-3, at 2-3, Findings 1-2, 5-6), this barrier is not identified in the Complaint and is not properly before the Court on summary judgment.

### 3.   Location of parking stall access aisle

Paragraph 18(c) of the Complaint alleges CHS failed to provide an ADA compliant access aisle on the compliant side of the parking stall, in violation of 2010 ADAS and 2015 ABAAS Section 502.3.4. (Doc. 1, at p. 8, ¶ 18(c)). Garcia's First Report contained a finding that the Premises was not in compliance with the ADA because the access aisle was on the driver's side of the parking stall.  (Doc. 66-1, at 20). At her deposition, Garcia testified that when she conducted her Rule 34 inspection in May 2021, the access aisle was located between the two new accessible parking stalls, which complied with the requirements of the ADA. (Doc. 66-1, at p. 8, 42:19-44:15).  Consistent with Garcia's deposition testimony, the Second Report does not allege any violations of the ADA based on the location of

the access aisle. The undisputed evidence thus demonstrates that this alleged

barrier has been remedied.

As discussed above, while the Second Report identifies a new barrier

relating to the width of the access aisle at the new parking lot (Doc. 58-3, at 4-5,

Findings 3 and 4), this barrier is not identified in the Complaint and is not properly

before the Court on summary judgment.

4.    Parking stall van signage

Paragraph 18(d) of the Complaint alleges CHS failed to provide compliant

parking stall van signage, in violation of 2010 ADAS and 2015 ABAAS Section

502.6. (Doc. 1, at p. 8, ¶ 18(d). Garcia's First Report contained a finding that the

Premises was not in compliance with the ADA because the van stall was missing a

sign identifying it as a van accessible stall. (Doc. 66-1, at 21). At her deposition,

Garcia testified that by the time she conducted her Rule 34 inspection in May

2021, CHS had corrected this deficiency and placed a compliant sign in the areas

where the accessible stalls were located. (Doc. 66-1, at p. 8, 43:16-44:7).

Consistent with Garcia's deposition testimony, Finding 25 of the Second Report

states that "[t]he van stall provides a sign identifying it as a van accessible stall" in

compliant with the ADA. (Doc. 58-3, at 26).  The undisputed evidence thus

demonstrates that this alleged barrier has been remedied.

5.    Curb ramp slope grading

21

Paragraph 18(e) of the Complaint alleges CHS failed to provide ADA compliant curb ramp slope grading, in violation of 2010 ADAS and 2015 ABAAS Section 406.1 (Doc. 1, at p. 8, ¶ 18(e)). Garcia's First Report contained a finding that the Premises was not in compliance with the ADA because "[t]he curb ramp slope exceeded the maximum running slope (Parallel to the direction of travel) allowable of 8.33%." (Doc. 66-1, at 22). At her deposition, Garcia agreed that by the time she conducted her Rule 34 inspection in May 2021, CHS had removed the curb ramp slope she had observed in August 2019 and replaced it with a compliant ramp.  (Doc. 66-1, at pp. 8-9, 44:8-45:1).  Consistent with Garcia's deposition testimony, the Second Report does not contain a finding relating to curb ramp slope. The undisputed evidence thus demonstrates that this alleged barrier has been remedied.

    6.   <u>Walkway</u>

Paragraph 18(f) of the Complaint alleges CHS failed to provide an ADA compliant walkway with safe, compliant transition with a change in elevation no greater than ¼ inch, in violation of 2010 ADAS and 2015 ABAAS Section 303.3. (Doc. 1, at p. 8, ¶ 18(f)). Garcia's First Report contained a finding that the Premises was not compliant with the ADA because "[t]he change in level where the gutter meets the curb ramp is greater than ¼ inch." (Doc. 66-1, at 23). At her deposition, Garcia agreed that by the time she conducted her Rule 34 inspection in

May 2021, CHS had remedied this alleged barrier. (Doc. 66-1, at p. 9, 45:2-16). Consistent with Garcia's deposition testimony, the Second Report does not contain a finding relating to the walkway. The undisputed evidence thus demonstrates that this alleged barrier has been remedied.

7. <u>Floor mats</u>

Paragraph 18(g) of the Complaint alleges that CHS failed to provide ADA compliant floor mats throughout the Premises, in violation of 2010 ADAS and 2015 ABAAS Section 302.2 (Doc. 1, at p. 9, ¶ 18(g)). Garcia's First Report contains a finding that the Premises was not compliant with the ADA because "[t]he door/floormat are not secured in place at the entry door." (Doc. 66-1, at 24). At her deposition, Garcia testified that when she conducted her Rule 34 inspection in May 2021, the floor mats at the front door had been removed. (Doc. 66-1, at p. 9, 45:17-46:23).  The undisputed evidence thus demonstrates that the doormat barrier alleged in the Complaint no longer exists.

Notwithstanding Garcia's deposition testimony, Findings 81 and 82 of the Second Report state, both state that "[t]he floor mat at the door is not secure in place" in violation of 2010 ADA Section 302.2. (Doc. 58-3, at 82-83). While these Findings refer to the "floor mat at the door" the accompanying photographs are of a doormat next to a counter, not at a door. (Doc. 58-3, at 82-83). These Findings are not sufficient to demonstrate any additional floor mat barriers, and the

undisputed evidence demonstrates that the doormat barrier alleged in the Complaint no longer exists.

8.   Sales/service transaction counter height

Paragraph 18(h) of the Complaint alleges CHS failed to provide ADA compliant sales/service counter height, in violation of 2010 ADAS and 2015 ABAAS Sections 904.4.1 and 904.4.2. (Doc.1, at p. 9, ¶ 18(h)).  Finding 8 in Garcia's First Report states that the Premises was not compliant with the ADA because "[t]he self-serve transaction counter is too high." (Doc. 66-1, at 25). At her deposition, Garcia testified that by the time she conducted her Rule 34 inspection in May 2021, the self-serve counter height barrier identified in Finding 8 had been corrected and the counter was compliant with the ADA. (Doc. 66-1, at p. 10-11, at 52:25-53:9). Consistent with Garcia's deposition testimony, Findings 31-33 and 59-61 of the Second Report reflect that the transaction counters at the Premises are at a compliant height. (Doc. 58-3, at 32-34, 60-62). The undisputed evidence thus demonstrates that this alleged barrier has been remedied.

9.   Self-serve dispenser height

Paragraph 18(i) of the Complaint alleges that CHS failed to provide ADA compliant self-serve dispenser height at several self-serve dispenser areas throughout the Premises, in violation of 2010 ADAS and 2015 ABAAS Section 308.1 (Doc. 1, at 9, ¶ 18(i)). Specifically, Simpson alleges the self-serve dispensers

were not at accessible wheelchair height, and did not allow him adequate reach

ranges for equal access to self-service items while in his wheelchair. (Doc. 1, at 9,

¶ 18(i)). Finding 9 of Garcia's First Report states that "[t]he self-serve items are

positioned too high for either a side or front approach" and includes a photograph

of several self-serve dispensers on a counter. (Doc. 66-1, at 26). At her deposition,

Garcia conceded that the self-serve counters identified in Findings 8 and 10 of her

First Report had been brought into compliance with the ADA. (Doc. 66-1, at p. 10-

11, at 52:25-53:9). In addition, Garcia agreed that any merchandise reach

violations could be remedied by placing signage with the international wheelchair

insignia and the words "assistance available upon request" or "please ask for

assistance if needed." (Doc. 66-1, at p. 15-16, 80:21-81:20).

 In support of its motion for summary judgment, CHS has provided the

declaration of Steve Haase, the General Manager for CenexZip Trip Stores, who

states that on August 31, 2021, a CHS employee placed a sign inside the Premises

that has the international wheelchair insignia and states "we are pleased to provide

assistance if you need help, please ask." (Doc. 77-1, at 2). The Haase declaration

includes a photograph of the sign. (Doc. 77-1, at 3). Simpson has not filed a

statement of disputed facts in response to CHS's summary judgment motion as

required by Local Rule 56.1(b), and does not point to any evidence that contradicts

Haase's declaration. Because Garcia testified that the self-serve counters identified

in her First Report have been brought into compliance with the ADA, and agreed that any merchandise reach violations could be remedied by placing a sign like the one that is now present in the Premises, the undisputed evidence demonstrates that this alleged barrier has been remedied.

    10.    Sales/service transaction counter height

Paragraph 18(j) of the Complaint alleges CHS failed to provide ADA compliant sales/service counter height, in violation of 2010 ADAS and 2015 ABAAS Sections 904.4.1 and 904.4.2. (Doc.1, at p. 9, ¶ 18(j)).  Finding 10 in Garcia's First Report states that the Premises was not compliant with the ADA because "[t]he self-serve transaction counter is too high." (Doc. 66-1, at 27). At her deposition, Garcia testified that by the time she conducted her Rule 34 inspection in May 2021, the self-serve counter height barrier identified in Finding 10 had been corrected and the counter was compliant with the ADA. (Doc. 66-1, at p. 10-11, at 52:25-53:9). Consistent with Garcia's deposition testimony, Findings 31-33 and 59-61 of the Second Report reflect that the transaction counters at the Premises are at a compliant height. (Doc. 58-3, at 32-34, 60-62). The undisputed evidence thus demonstrates that this alleged barrier has been remedied.

    11.    Self-serve dispenser height

Paragraph 18(k) of the Complaint alleges CHS failed to provide ADA compliant self-serve dispenser height, at several self-serve dispenser areas

throughout the subject throughout the Premises, in violation of 2010 ADAS and 2015 ABAAS Section 308.1 (Doc. 1, at 9, ¶ 18(k)). Specifically, Simpson alleges the self-serve dispensers were not at accessible wheelchair height, and did not allow him adequate reach ranges for equal access to self-service items while in his wheelchair. (Doc. 1, at 9, ¶ 18(k)). Finding 11 of Garcia's First Report states that "[t]he self-serve items are positioned too high for either a side or front approach" and includes a photograph of several self-serve dispensers on a counter. (Doc. 66-1, at 28).

As discussed above, Garcia conceded at her deposition that the self-serve counters identified in Findings 8 and 10 of her First Report had been brought into compliance with the ADA. (Doc. 66-1, at p. 10-11, at 52:25-53:9). In addition, Garcia agreed that any merchandise reach violations could be remedied by placing signage with the international wheelchair insignia and the words "assistance available upon request" or "please ask for assistance if needed." (Doc. 66-1, at p. 15-16, 80:21-81:20). The Haase declaration, which is unrebutted by Simpson, states that CHS has placed such a sign inside the Premises. (Doc. 77-1, at 2). Because Garcia testified that the self-serve counters identified in her First Report have been brought into compliance with the ADA, and agreed that any merchandise reach violations could be remedied by placing a sign like the one that

is now present in the Premises, the undisputed evidence demonstrates that this alleged barrier has been remedied.

12. Merchandise, point of sale, displays, and self-serve dispenser reach ranges

Paragraph 18(l) of the Complaint alleges CHS failed to provide ADA compliant merchandise, point of sale, displays, and self-serve dispenser reach ranges throughout the Premises in violation of the 2010 ADAS and 2015 ABAAS Section 308.1. (Doc. 1, at 10 ¶ 18(l). Finding 12 of Garcia's First Report states that "[t]he merchandise, point of sale, and self-serve dispenser throughout the store are positioned too high for either a side or front approach." (Doc. 66-1, at 29).

As discussed above, Garcia conceded at her deposition that the self-serve counters identified in Findings 8 and 10 of her First Report had been brought into compliance with the ADA. (Doc. 66-1, at p. 10-11, at 52:25-53:9). In addition, Garcia agreed that any merchandise reach violations at the Premises could be remedied by placing signage with the international wheelchair insignia and the words "assistance available upon request" or "please ask for assistance if needed." (Doc. 66-1, at p. 15-16, 80:21-81:20). The Haase declaration, which is unrebutted by Simpson, states that CHS has placed such a sign inside the Premises. (Doc. 77-1, at 2). Because Garcia testified that the self-serve counters identified in her First Report have been brought into compliance with the ADA, and agreed that any merchandise reach violations could be remedied by placing a sign like the one that

28

is now present in the Premises, the undisputed evidence demonstrates that this alleged barrier has been remedied.

As set forth in Findings 34-58 and 62-79, Garcia's Second Report identifies several additional self-serve and merchandise reach violations throughout the Premises that were not alleged in the Complaint. (Doc. 58-3, at 35-59; 63-78). Because these specific barriers were not alleged in the Complaint, these alleged violations are not properly before the Court on summary judgment. But even assuming they are properly considered, Garcia's deposition testimony and the Haase declaration demonstrate that these alleged barriers have been remedied.

13. <u>Restroom directional and informational signage</u>

Paragraph 18(m) of the Complaint alleges CHS failed to provide ADA compliant restroom directional and information signage, in violation of 2010 ADAS and 2015 ABAAS Section 216.8. (Doc. 1, at 10  ¶ 18(m)). Finding 13 in Garcia's First Report states that the Premises was not compliant with the ADA because it did not "[p]rovide directional signage to the nearest accessible restrooms." (Doc. 66-1, at 30). At her deposition, Garcia testified that by the time she conducted her Rule 34 inspection in May 2021, CHS had placed ADA compliant restroom signage in the Premises. (Doc. 66-1, at p. 12-13, at 60:24-61:22). Consistent with Garcia's deposition testimony, Finding 91 of the Second Report reflect that the restroom directional and informational signage at the

Premises is ADA compliant. (Doc. 58-3, at 92). The undisputed evidence thus demonstrates that this alleged barrier has been remedied.

14.   Restroom signage

Paragraph 18(n) of the Complaint alleges CHS failed to provide ADA compliant restroom signage, in violation of 2010 ADAS and 2015 ABAAS Section 216.8. (Doc.1, at 10 ¶ 18(n)). Finding 14 in Garcia's First Report states that the Premises was not compliant with the ADA because "[t]he restroom is missing the International Symbol of Accessibility (ISA)." (Doc. 66-1, at 32). At her deposition, Garcia testified that by the time she conducted her Rule 34 inspection in May 2021, CHS had placed ADA compliant restroom signage in the Premises. (Doc. 66-1, at p. 13, at 61:23-52:18). Consistent with Garcia's deposition testimony, Findings 92 and 93 of the Second Report confirm that the restroom signage is ADA compliant.  (Doc. 58-3, at 93-94). The undisputed evidence thus demonstrates that this alleged barrier has been remedied.

15.   Insulated pipes

Paragraph 18(o) of the Complaint alleges that CHS failed to provide ADA compliant insulated pipes, in violation of 2010 ADAS and 2015 ABAAS Section 606.5. (Doc. 1, at 10 ¶ 18(o)). Finding 16 in Garcia's First Report states that the Premises was not compliant with the ADA because "[t]he water and drain pipes under the lavatory are not adequately insulated." (Doc. 66-1, at 35). At her

deposition, Garcia testified that by the time she conducted her Rule 34 inspection in May 2021, CHS had installed insulated pipes in this location. (Doc. 66-1, at p. 13, at 64:2-18). Consistent with Garcia's deposition testimony, Finding 96 of the Second Report confirms that the pipes under the lavatory are properly insulated. (Doc. 58-3, at 93-94). The undisputed evidence thus demonstrates that this alleged barrier has been remedied.

16.    Mirror height

Paragraph 18(p) of the Complaint alleges that CHS failed to provide ADA compliant mirror height, in violation of 2010 ADAS and 2015 ABAAS Section 603.3. (Doc. 1, at 11 ¶ 18(p)). Finding 17 in Garcia's First Report states that the Premises was not compliant with the ADA because the mirror in the restroom was mounted too high. (Doc. 66-1, at 36). At her deposition, Garcia testified that by the time she conducted her Rule 34 inspection in May 2021, CHS had corrected this problem. (Doc. 66-1, at p. 14, at 65:2-17). Consistent with Garcia's deposition testimony, Finding 97 of the Second Report confirms that the mirror is mounted at a compliant height. (Doc. 58-3, at 98). The undisputed evidence thus demonstrates that this alleged barrier has been remedied.

17.    Paper towel dispenser height

Paragraph 18(q) of the Complaint alleges CHS failed to provide ADA compliant towel dispenser height, in violation of 2010 ADAS and 2015 ABAAS

31

Section 308.2.1. (Doc. 1, at 11 ¶ 18(q)).  Finding 18 in Garcia's First Report states

that the Premises was not compliant with the ADA because "[t]he paper towel

dispenser's operation mechanism is too high off the floor." (Doc. 66-1, at 37). At

her deposition, Garcia testified that by the time she conducted her Rule 34

inspection in May 2021, CHS had corrected this problem. (Doc. 66-1, at p. 14, at

65:18-66:13). Consistent with Garcia's deposition testimony, Finding 99 of the

Second Report confirms that the paper towel dispenser's operation mechanism is at

compliant height off the floor. (Doc. 58-3, at 100). The undisputed evidence thus

demonstrates that this alleged barrier has been remedied.[3]

>       18.   Toilet paper dispenser location

Paragraph 18(r) of the Complaint alleges that CHS failed to provide ADA

compliant toilet paper dispenser location, in violation of 2010ADAS and 2015

ABAAS Section 604.7. (Doc. 1, at 11 ¶ 18(r)). Finding 19 in Garcia's First Report

states that the Premises was not compliant with the ADA because the toilet paper

dispenser was not installed within the compliant range. (Doc. 66-1, at 38). At her

deposition, Garcia testified that by the time she conducted her Rule 34 inspection

in May 2021, CHS had corrected this problem. (Doc. 66-1, at p. 14, at 66:14-67:4).

---

[3] Findings 80 and 100 of the Second Report identify non-compliant paper towel
dispenser controls as additional barriers at the Premises. (Doc. 58-3, at 81 and
100). Because these specific barriers were not alleged in the Complaint, they are
not properly considered on summary judgment.

Consistent with Garcia's deposition testimony, Finding 106 of the Second Report confirms that the toilet paper dispenser is installed within the ADA compliant range. (Doc. 58-3, at 107). The undisputed evidence thus demonstrates that this alleged barrier has been remedied.

    19.    <u>Toilet compartment maneuverability clearances</u>

Paragraph 18(s) of the Complaint alleges CHS failed to provide ADA compliant toilet compartment maneuverability clearances, in violation of 2010 ADAS and 2015 ABAAS Section 604.8.1.1. (Doc. 1, at 11 ¶ 18(s)). Finding 20 in Garcia's First Report states that the Premises was not compliant with the ADA because the toilet compartment was not wide enough. (Doc. 66-1, at 39). At her deposition, Garcia testified that when she conducted her Rule 34 inspection in May 2021, CHS had remedied this issue and the toilet stall was ADA compliant. (Doc. 66-1, at p. 14, at 67:7-68:2). The Second Report does not contain any findings relating to toilet compartment maneuverability clearances. The undisputed evidence thus demonstrates that this alleged barrier has been remedied.[4]

---

[4] Findings 119 and 120 state that a collection container in the restroom "projects more than 4 inches into the circulation path" in violation of 2010 ADAS and 2015 ABAAS Section 307.2 (Doc. 58-3, at 120-121). Because no even arguably similar barrier or violation was alleged in the Complaint, these alleged barriers are not properly before the Court on summary judgment.

As outlined in detail above, the undisputed evidence demonstrates that all 19 barriers alleged in the Complaint either no longer exist or have been remedied. Consequently, the ADA claims alleged in the Complaint are moot and CHS is entitled to summary judgment.

In closing, for purposes of thoroughness, the Court addresses five barriers that are identified in the Second Report but are not alleged in the Complaint. Finding 95 of the Second Report states that the restroom "door exceeds the maximum allowable opening force" of five pounds in violation of 2010 ADAS and 2015 ABAAS Section 404.2.9. (Doc. 58-3, at 96). Because the Complaint did not allege this specific barrier or any related barrier, it is not properly before the Court on summary judgment. Even if it was, CHS has submitted undisputed evidence that this alleged barrier has been remedied. In support of its cross-motion for summary judgment, CHS relies on the Haase declaration which states that "CHS has adjusted the door opener on the restroom door in the Premises so that it has a maximum opening force of less than five pounds." (Doc. 66, at 18 ¶ 72). Simpson has not filed a statement of disputed facts as required by Local Rule 56.1(d) and does not point to any evidence contradicting Haase's statement that CHS has remedied this barrier.

Finding 87 and 88 of the Second Report state that an exterior "walkway contains abrupt vertical edges and/or variations over ¼ inch" in violation of 2010

ADAS and 2015 ABAAS Sections 303.2 and 303.3. (Doc. 58-3, at 88-89). Finding 89 and 90 states that the walkway "contains loose gravel and/or surface materials that do not provide for a firm, slip resistant surface" in violation of 2010 ADAS and 2015 ABAAS Section 302.1 (Doc. 58-3, at 90-91). Because no even arguably similar barrier or violation was alleged in the Complaint, these alleged barriers are not properly before the Court on summary judgment. Even if they were, the Court notes that CHS has submitted the declaration of architect David Gray, who states that these alleged barriers relate to the exterior of the rear door of the building, "which is not on the required Accessible Route" and "is for the use of store employees and the delivery of goods to the business," which means it is not required to meet ADA standards. (Doc. 68, at 4 ¶ 8).

Finally, Findings 104 and 105 of the Second Report state that "[t]he toilet is not located within the range allowed from the side wall or partition" in violation of 2010 ADAS and 2015 ABAAS Section 604.2. (Doc. 58-3, at 105-106). Because the Complaint did not allege this specific barrier, it is not properly before the Court on summary judgment. Even if it was, CHS has submitted undisputed evidence that this alleged barrier has been remedied. In support of its cross-motion for summary judgment, CHS relies on the Haase declaration which states that "CHS has adjusted the location of the toilet in the restroom on the Premises so that the centerline of the toilet is between 16 and 18 inches from the wall." (Doc. 66, at 18

¶ 73). Simpson has not filed a statement of disputed facts as required by Local Rule 56.1(d) and does not point to any evidence contradicting Haase's statement that CHS has remedied this barrier.

### C.    Attorney Fees

Simpson's Complaint includes a request for reasonable attorney's fees and costs. (Doc. 1, at 14). Under the ADA, a court may award attorney's fees and costs to the "prevailing party." 42 U.S.C. § 12205.  In *Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human Res.*, 532 U.S. 598, 600 (2001), the United States Supreme Court addressed whether the term "prevailing party" under the ADA "includes a party that has ... achieved the desired result because the lawsuit brought about a voluntary change in the defendant's conduct." *Buckhannon* held that a "prevailing party" is limited to only those plaintiffs who achieve either "judgments on the merits" or "court-ordered consent decrees" since those outcomes "create the 'material alteration of the legal relationship of the parties' necessary to permit an award of attorney's fees" in the context of the ADA. *Buckhannon*, 532 U.S. at 604. See also *Oregon Nat. Desert Ass'n v. Locke*, 572 F.3d 610, 614-15 (9th Cir. 2009).

CHS argues that under the standard articulated in *Buckhannon*, Simpson is not a prevailing party unless he prevails on summary judgment and obtains a judgment on the merits or a court-ordered consent decree. Simpson does not

address *Buckhannon*, and does not respond to this portion of CHS's summary judgment motion.

Because Simpson's motion for summary judgment should be denied, and CHS has demonstrated that it is entitled to summary judgment on Simpson's ADA claims, Simpson is not entitled to attorney fees. Accordingly, CHS's motion for summary judgment on Simpson's claim for attorney fees should be granted.

## IV.    Conclusion

In sum, and for the reasons outlined above, the Court finds that all of the ADA claims alleged in Simpson's Complaint are moot because the alleged barriers either no longer exist or have been remedied. To the extent the Second Report identifies barriers that were not alleged in the Complaint, they are not properly considered on summary judgment. To the extent the Second Report can be construed as providing additional detail concerning barriers alleged in the Complaint, CHS has demonstrated that it is entitled to summary judgment.

NOW, THEREFORE, IT IS ORDERED that the Clerk shall serve a copy of the Findings and Recommendation of the United States Magistrate Judge upon the parties. The parties are advised that pursuant to 28 U.S.C. § 636, any objections to

//

//

//

the findings and recommendations must be filed with the Clerk of Court and copies

served on opposing counsel within fourteen (14) days after entry hereof, or

objection is waived.

      DATED this 25th day of January, 2022.


_____
Kathleen L. DeSoto
United States Magistrate Judge